Martin, J.
delivered the opinion of the court. On the 29th of June, 1811, Cox (the plaintiff below, now the appellant and appellee) and Bartlett, were partners in trade, under the firm of Bartlett & Cox; and Cox was also the attorney in fact of Bartlett. The firm owned two undivided thirds of a rope-walk; the remaining third was the property of Hellen & Wederstrand. *12 Bartlett & Cox sold one of their thirds to Rabaud for $14,151, payable $5,000 down, $5,000 in one, and $4,151 in two years.
East’n. District.
Dec. 1815.
On the same day, the vendors and vendee came to an agreement, evidenced by a notarial act, by which the latter (in order to afford to the former the facility of obtaining the amount of the deferred instalments) bound himself to furnish, on request, his note or notes to the amount of $5,000, or any sum under, payable at 60 days, to the order of the vendors, to be discounted at the bank; and at the maturity of such note, or notes, to furnish another or others, of the same amount, to be discounted, in order to take up the first; and so on at the end of every 60th day, until the 29th of June, 1812, when the whole sum of $5,000 was to be paid. A like provision was made in respect to the last instalment.
Rabaud took charge of the rope-walk, carrying on its affairs, for the benefit of all parties, until his death, which happened on the 15th of May, 1813.
Bartlett & Cox and Hellen & Wederstrand, respectively opened accounts with Rabaud.
The first item to the debit of Rabaud, in his account with Bartlett & Cox, is a sum of $14,151, the purchase money aforesaid, and credit is given him for the first payment, viz. $4,000 in cash *13 and $1,000 in a note; and farther, for a note of $5,000, the amount of the second payment, anticipated according to agreement: and on the 29th of June, 1812, credit was given him for a note of $4,151.
Rabaud, from this time till his death, supplied Bartlett & Cox with his notes according to the agreement, and also with other notes and drafts of his and other persons to a considerable amount, and Bartlett & Cox supplied him with provisions, yarns, money and other articles, for the use of the rope-walk, to the amount of upwards of $40,000.
After the death of Rabaud, the business of the walk was conducted as before, by his widow until the first of January, 1814, when a balance of $6,873 85 was struck in favor of Bartlett & Cox.
The amount of the accommodation paper given by Rabaud was intermingled with the proceeds of other paper furnished by him, and the whole was indistinctly carried to his credit, and applied by Bartlett & Cox, in their account, to the discharge of the purchase money and of the supplies made to him in cash, provisions, yarns, &c. for the use of the rope-walk.
Rabaud’s widow renounced to the community.
The present suit was instituted for the *14 recovery of the aforesaid balance, with a privilege, lien or mortgage on Rabaud’s part of the ropewalk. Judgment was obtaind for the whole sum, but the privilege, lien or mortgage, was confined to that of 4,151 dollars.
From this judgment, both parties have appealed; the plaintiff contending that the whole is a privileged debt; the defendants, that no part of it is so.
The amount is not contested.
During the trial below, the plaintiff produced ten notes of Mde. Rabaud, given for the use of the estate, protested and remaining in his hands; eight of which bear date of the latter part of the month of May, 1813, and amount together to the sum of 5,350 dollars; one of the 9th of June for 1,000 dollars, and one of the 16th of June for 550 dollars; all at 60 days; the aggregate amount 6,850 dollars.
The defendants, on their part, showed that the renewing notes, according to the agreement and the routine of bank business, as far as related to the note for 4,151 dollars, should have different dates; and they produced and spread on the record copies of sundry notes discounted in bank, subscribed by Rabaud, of dates and amounts corresponding with those of the origin *15 al note. Some of these notes were endorsed by Bartlett & Cox. They also spread on the record copies of a number of checks of corresponding amounts and dates, with which they contended the accommodation paper was taken up.
On these facts, the only question for the solution of which this court is resorted to, is, whether the plaintiff’s claim be in the whole or part a privileged one, or any thing more than a simple debt.
If we examine only the account current, which makes part of the statement of facts, it is clear that the plaintiff can have no benefit from his mortgage; for, striking a balance on the first of July, 1813, when the firm received a large payment, they are debtors, after being paid for the rope-walk, of the sum of $2239 02. The period, taken for striking this balance, is only two days after the last portion of the price of the rope-walk became due.
But, besides the deed of sale and the account current, there is another instrument which it is proper to look into. This is the notarial act by which a facility is secured to the plaintiff—the demand of Rabaud’s notes for the two deferred instalments, in order to obtain money thereon by anticipation—and afterwards of other notes to *16 renew the former ones from 60 to 60 days, as they became payable.
The effect, on the mortgage, of the facility, which it appears from the account current was thus afforded, by two notes received by the plaintiff (the first of 5,000 dollars, the other for 4,151 dollars) must be ascertained.
The notes certainly did not extinguish the mortgage; for, if either the original notes, or any of those subsequently given for the renewal of them, was unpaid at maturity in the hands of the plaintiff, he might resort to his mortgage. But this transaction, although it did not extinguish the mortgage, did certainly affect it. For, even
if the plaintiff had on the day any of the instalments became payable, applied to a judge for an order of seizure, if the whole transaction was disclosed in the petition, he would have with holden his flat, if the notes were not tacked to the petition, until they were satisfactorily accounted for: and if, for want of this information, the order of seizure had been obtained, its execution would have been suspended on the facts being properly suggested by the vendee.
The plaintiff could not have offered the absence of the notes from the possession of the maker, as evidence of their being unpaid and consequently no obstacle to his demand. For it *17 would not suffice for him to shew that the maker had not paid; he must have gone farther (as the notes were negociable) and have shewn that he was still holder of them.
We are, therefore, of opinion, that the plaintiff cannot avail himself of his mortgage, unless he shew that he still holds the original notes, or either of them, or any other clearly proven to be given for the renewal of the original.
With regard to the first sum of 5,000 dollars, which became due on the 29th of June, 1812, as no note of a date prior to the 13th of May, 1813, is offered, and as the statement of facts shews that the original note to be given for it, was not to be renewed after the first date, there cannot be any doubt of the correctness of the opinion of the parish court, who denied any right of mortgage or privilege thereon.
As to the second sum of 4,151 dollars, it appears that the original note for it, was given on the 29th of June, 1812; in the ordinary routine of bank business the paper became renewable on the 1st of September and 3d of November, of that year, and on the 5th of January, 9th of March, and 11th of May, 1813; after which, according to the agreement, it was not to be renewed, but paid. The defendants have shewn that *18 on these days, notes of theirs, of the amount for which the original note was to be renewed, were negociated, some with, others without, the plaintiff’s endorsement. This is not gainsayed.
But the plaintiff produces ten notes of Mde. Rabaud, given, it is admitted, for the benefit of the rope-walk. The first, in order of time, bears date of the 13th of May, 1813; its amount is 550 dollars, and the account current shews that on the day it became payable, the plaintiff owed to the estate a sum more than sufficient to balance it. The other nine notes have different dates, from the 14th of May to the 16th of July, and their aggregate amount is 6,850 dollars; but the individual sums are such that no number of notes can be selected, the total amount of which can correspond to the sum of 4,151 dollars, expressed in the original note, said to be represented by notes in the plaintiff’s possession.
When it is considered that from the day of the sale to Rabaud, an account was kept open till the first of January, 1814, a period of about two years and a half, when a balance was struck, and appeared to be in favor of the plaintiff, of the sum of 6,873 dollars, including the ten notes amounting to 6,850 dollars, it will easily be believed that these ten notes represent that balance, within a trifle. When we notice, that within *19 that period, the parties dealt together to the amount of upwards of 60,000 dollars, including the 14,151 dollars, the price of the rope-walk, it will not be easy to believe, with the testimony (or rather presumption) before us, that the balance due to the plaintiff is the result of transactions exclusively relative to the price of the rope-walk, which bears an inconsiderable proportion to the rest: and if this balance is not exclusively the result of such transactions, we are without any rule by which it may be apportioned.
Neither will any one, with the least knowledge of the routine of bank business, easily apprehend how a note for 4,151 dollars, at 60 days, dated the 29th of June, 1812, was by successive renewals transferred into the ten notes produced, the dates and amounts of which bear no possible kind of relation to it.
The account of the renewal of the notes, as given by the defendants is much more probable, and the presumptive evidence arising from the paper which they spread on the record, and which the plaintiff was offered the opportunity of contradicting, would suffice to turn the scales against the latter, on which the onus probandi lies.
We cannot recognize these ten notes, or either of them, as representing that of 4,151 dollars.
Porter and Depeyster, for the plaintiff; Moreau for the defendants.
We conclude that the parish court erred in allowing any lien, right of mortgage, or privilege to the plaintiff; its judgment is therefore, annulled, avoided and reversed; and, proceeding to give such a judgment as the court below ought to have given, we order, adjudge and decree, that the plaintiff be collocated as a simple creditor of J. B. Rabaud’s estate, for the sum of 6,873 dollars and 86 cents, and that he pay the costs of both appeals.